FILED
United States Court of Appeals
Tenth Circuit

August 19, 2013

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

JULIA COPELAND COOPER, an
individual United States citizen,

Plaintiff-Appellant,

v.

No. 12-1096

NCS PEARSON, INC., a Minnesota
corporation,

Defendant-Appellee.

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:10-CV-02840-PAB-CBS)**

Harold R. Bruno III of Robinson Waters & O'Dorisio, P.C., Denver, Colorado,
for Plaintiff-Appellant.

Gregory S. Tamkin (Kerry LeMonte with him on the brief) of Dorsey & Whitney,
LLP, Denver, Colorado, for Defendant-Appellee.

Before **LUCERO**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

Julia Copeland Cooper (Copeland) appeals from a grant of summary judgment dismissing on statute of limitations grounds her Copyright Act claims against NCS Pearson, Inc. for co-ownership of a psychological test. The statute of limitations for claims under the Copyright Act is three years. 17 U.S.C. § 507(b). Because any such claims available to Ms. Copeland would have accrued in 1993 or 1996 and she did not bring this action until 2010, we affirm.

**I.**

On review of summary judgment, we recite the relevant facts in the light most favorable to the non-moving party. *Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1220 n.1 (10th Cir. 2008). In the 1980s and 1990s, Ms. Copeland co-created a psychological test instrument called the Battery for Health Improvement (BHI) with Mark Disorbio, her husband at the time, and Daniel Bruns. Ms. Copeland is a physical therapist and Dr. Disorbio and Dr. Bruns are both clinical psychologists. After creating the BHI, Ms. Copeland, Dr. Bruns, and Dr. Disorbio formed a corporation called Battery for Health and Illness, Inc. (BHI, Inc.). Dr. Bruns and Dr. Disorbio were the corporation's directors and Ms. Copeland was its President and registered agent. The record does not reflect who owned the stock. In 1993, Dr. Bruns and Dr. Disorbio assigned their intellectual property rights in the BHI to the corporation. Each assignment stated that Dr. Bruns and Dr. Disorbio were the joint authors and owners of the BHI and the "absolute proprietor[s] of the copyright and all attendant intellectual property

rights of the Work." Aplt. App., vol. 1 at 103-04 (Dr. Bruns assignment), 143-44 (Dr. Disorbio assignment). The assignments further warranted that Dr. Bruns and Dr. Disorbio "exclusively own[] all intellectual property rights in the Work and that no other person has an option, claim, or right to the Work." *Id.* at 104, 144. Ms. Copeland executed these assignments as president of BHI, Inc.

Effective May 4, 1993, Dr. Bruns, Dr. Disorbio, and BHI, Inc. granted defendant's predecessor corporation, National Computer Systems (NCS), "all right, title, and interest" in the BHI, granting the right to publish and market the test in exchange for royalties. *Id.* at 78. The Publication Agreement with NCS defined the "authors" of the BHI as Dr. Bruns, Dr. Disorbio, and BHI, Inc., and warranted that they "exclusively own all Intellectual Property Rights" in the BHI "and that no other person has an option, claim, or right" to the test. *Id.* at 82. The Publication Agreement did not identify Ms. Copeland as an author. It was signed by Ms. Copeland for BHI, Inc., Dr. Bruns, Dr. Disorbio, and a representative of NCS. We accept for summary judgment purposes Ms. Copeland's explanation that she signed the Agreement because Dr. Disorbio told her that only clinical psychologists could be listed as authors of psychological tests on "legal documents," and she believed him at the time.

In 1996, NCS first published the BHI. The cover stated that it was "by" Dr. Bruns and Dr. Disorbio, "with contributions by" Ms. Copeland. *Id.*, vol. 2 at 538. She was also listed below Dr. Bruns and Dr. Disorbio in the section "About

-3-

the Authors." Ms. Copeland was aware that she was being credited in this manner. *See id.*, vol. 1 at 255 (Ms. Copeland checked to see if there had been any change in "the way I was credited since 1996"). In 1996, NCS began to send royalty checks to BHI, Inc., to the attention of Ms. Copeland as President. She disbursed 50% of the money to Dr. Bruns and 50% to Dr. Disorbio. Because she and Dr. Disorbio were married, however, she effectively shared in his portion of the royalties. They divorced in 1999.[1]

In 2002, defendant published new editions of the BHI that did not list Ms. Copeland's name on the cover or on the page about the authors.[2] Ms. Copeland discovered the change in 2009 and brought this action in federal court in 2010. Her complaint sought a declaration that she is a one-third co-owner (with NCS Pearson owning the other two-thirds) of the copyright to the BHI, an order requiring NCS Pearson to start crediting her "in the same manner" as it credits Dr. Bruns and Dr. Disorbio, and an accounting for her share of revenues. *Id.* at 9. The district court granted summary judgment for defendant on statute of limitations grounds, and thus did not reach defendant's equitable

---

[1] Ms. Copeland receives one-third of Dr. Disorbio's royalties through their divorce decree. It appears she did not raise any claims related to co-ownership of the BHI in the divorce proceedings.

[2] In both of these editions, Ms. Copeland was acknowledged as follows: "The authors wish to express their appreciation to [plaintiff] whose knowledge, professional expertise, and support greatly facilitated the completion of this project." Aplt. App., vol. 1 at 65, 72; *id.*, vol. 2 at 415.

defenses of estoppel, laches, and unclean hands.

**II.**

We review a grant of summary judgment de novo. *Colorado Dep't of Pub. Health & Env't v. United States*, 693 F.3d 1214, 1221 (10th Cir. 2012). Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting FED. R. CIV. P. 56(a)).

No civil action under the Copyright Act can proceed "unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). The Act is silent as to when a copyright claim "accrues," and neither this circuit nor the Supreme Court has specifically defined copyright claim accrual. However, the statute of limitations for a federal cause of action generally "begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). In the copyright co-ownership context, no form of notice or constructive notice is clearer than "plain and express repudiation of co-ownership . . . communicated to the claimant." *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996); *id.* at 1368 (contract offered to plaintiffs stating that defendant was "sole owner and copyright holder" put plaintiffs on notice even though plaintiffs did not sign contract); *Ritchie v.*

-5-

*Williams*, 395 F.3d 283, 288 n.5 (6th Cir. 2005) (same, in letter); *see also Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007).

The district court held that the 1993 Publication Agreement put Ms. Copeland on notice that NCS was repudiating her ownership interest, assuming she had one, in the BHI. Accordingly, the court held that her claim accrued in 1993. We reject Ms. Copeland's argument that the district court impermissibly weighed evidence or decided disputed facts to reach this conclusion. The court relied only on the undisputed fact that Ms. Copeland signed the 1993 Agreement knowing what it said, *i.e.*, that NCS was acquiring "all Intellectual Property Rights" to the BHI and that no person other than Dr. Bruns and Dr. Disorbio "has an option, claim, or right" to the BHI. Aplt. App., vol. 1 at 82. Ms. Copeland has not alleged that she signed the Agreement due to some form of fraudulent concealment, inducement, or other improper behavior on defendant NCS Pearson's part which made her unaware of its contents. *See*, *e.g.*, *Indus. Constructors*, 15 F.3d at 969. We agree with the district court that the 1993 Agreement placed Ms. Copeland on notice that her ostensible copyright co-ownership claim was in jeopardy and thereby started the statute of limitations running.

Ms. Copeland's only explanation for why she signed the Agreement is that Dr. Disorbio told her she could not be listed as an author of the BHI on legal documents. She also asserts that Dr. Disorbio and Dr. Bruns continued to credit

-6-

her as a co-author of the BHI on their own personal materials and CVs after 1993, which kept her from realizing that NCS did not consider her a co-author. While fraudulent concealment, inducement, or trickery *by a defendant* can toll the statute of limitations of a federal cause of action, *Indus. Constructors,* 15 F.3d at 969; *Irwin v. Dep't. of Veterans Affairs,* 498 U.S. 89, 96 (1990), Dr. Bruns and Dr. Disorbio are not defendants in this action, and Ms. Copeland does not allege any connection between their actions and defendant NCS Pearson.

Ms. Copeland argues that the district court wrongly attributed dispositive weight to the 1993 Agreement and ignored her explanation that she signed it only because Dr. Disorbio told her that as a non-psychologist she could not be recognized as an author on legal documents, which she believed to be legally correct. But the district court's analysis of the 1993 Agreement and Ms. Copeland's proffered facts was not a fact determination; it was an application of the legal principle that ignorance of the law does not toll a statute of limitations. *Gatewood v. R.R. Ret. Bd.*, 88 F.3d 886, 889-90 (10th Cir. 1996).

The district court reasoned in the alternative that if Ms. Copeland's claim did not accrue in 1993, it clearly accrued by 1996. We agree. Although Ms. Copeland admitted she was aware of the 1996 BHI, which represented that it was "by" Dr. Bruns and Dr. Disorbio, "with contributions by" her, in the present action she nevertheless claims the right to be recognized in the *same manner* as Dr. Bruns and Dr. Disorbio. Awareness that one is not being credited in the same

-7-

manner as other authors starts the statute of limitations running for copyright co-ownership claims. *Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000). Because Ms. Copeland was aware in 1996 of the basis for this claimed right – that she was *not* being attributed in the same manner – her claim accrued then if it had not already accrued in 1993.

It is undisputed that Ms. Copeland was aware in 1996 she was not receiving royalties but that Dr. Bruns and Dr. Disorbio were. Awareness that one is not receiving royalties also puts one on notice of the basis for a copyright co-ownership claim. *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik*, 510 F.3d 77, 90 (1st Cir. 2007); *see also Santa-Rosa v. Combo Records*, 471 F.3d 224, 228 (1st Cir. 2006). Ms. Copeland argues that because she received money paid as royalties for the BHI through Dr. Disorbio when she was married to him, and later through the divorce decree, the district court should not have attributed "dispositive significance" to the fact that she was not paid an individual share of royalties by defendant or its predecessor. This argument is specious. Spouses may share in one spouse's royalties during a marriage by the operation of marital property laws, and royalties can accordingly be divided upon divorce as a form of marital property. *See*, *e.g.*, *Matter of Marriage of Monslow*, 912 P.2d 735, 747 (Kan. 1996); *In re Marriage of Heinze*, 631 N.E.2d 728, 786 (Ill. App. Ct. 1994). That Dr. Disorbio's royalty payments benefitted Ms. Copeland because she was his spouse does not support even a weak inference

-8-

that NCS recognized her to be a co-author of the BHI. Indeed, if Dr. Disorbio and Ms. Copeland were each one-third owners of the copyright but had for some reason agreed to receive their royalty payments in one check, we would expect their "marital" share of royalties to have been two-thirds, with Dr. Bruns taking the other third. Instead, Dr. Disorbio received half and Dr. Bruns received half. This arrangement reinforces, rather than undermines, the conclusion the district court drew from the other undisputed facts: that NCS believed Dr. Disorbio and Dr. Bruns to be the only two authors of the BHI, and that Ms. Copeland, having signed the 1993 Agreement and seen the 1996 BHI, knew or should have known that NCS so believed.

All of Ms. Copeland's other proffered fact disputes are immaterial. "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). Ms. Copeland relies heavily on the (disputed) fact that Dr. Bruns and Dr. Disorbio represented her to be a BHI co-author on some of their personal materials after 1993 and 1996, such as their CVs and websites. She does not contend that these representations were done in connection with defendant NCS Pearson and, as we have already noted, Dr. Bruns and Dr. Disorbio are not defendants in this action. Thus, those facts, even if true, would not affect when her claim accrued against NCS Pearson. Ms. Copeland also refers to evidence that she was acknowledged as a co-author of *other publications*: an article about

the BHI in a magazine, and a guidebook called Advanced BHI Interpretation. Although these publications are related to the BHI, we fail to see (and Ms. Copeland does not explain) how they would call into question NCS's express repudiation of her authorship of the BHI itself.

Finally, Ms. Copeland contends that "throughout the 2000s" she saw materials published by defendant that gave her authorship credit. But as we have explained, the statute of limitations started running in 1993 or at best 1996, so it would have expired in 1996 or 1999. Even assuming there were grounds to toll the statute of limitations in "the 2000s," therefore, that would not make Ms. Copeland's claim timely because the basis for tolling would have arisen after the limitations period expired. *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996).

Any copyright co-ownership claims Ms. Copeland might have had accrued in 1993 or 1996 and are therefore barred by the three-year statute of limitations set out in 17 U.S.C. § 507(b).[3] We affirm.

---

[3] Any reference herein to Ms. Copeland's copyright co-ownership claims is purely hypothetical and not just because we have not reached their merits. Equitable estoppel "prevent[s] a party from taking a legal position inconsistent with an earlier statement or action that places his adversary at a disadvantage." *Penny v. Giuffrida*, 897 F.2d 1543, 1545 (10th Cir. 1990). Although we need not reach the issue, we note that defendant's equitable estoppel defense against even a timely copyright co-ownership claim by Ms. Copeland would likely succeed, given that she signed a document warranting to NCS that she did *not* have an ownership interest in the BHI.